24-1951

IN THE

# United States Court of Appeals

**FOR THE FIRST CIRCUIT**

────────────────

KATHLEEN F. HEBERT; TREVOR PARKER HEBERT; ZACHARY R. HEBERT

*Plaintiffs – Appellees,*

v.

KARISSA DONAHUE, as Personal Representative of the Estate of Tiffany Donahue-Hebert, deceased,

*Defendant – Appellant,*

METROPOLITAN LIFE INSURANCE CO.; OFFICE OF PERSONNEL MANAGEMENT,

Defendants.

────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
in No. 1:18-cv-11483, Judge M. Page Kelley

**BRIEF OF DEFENDANT-APPELLANT
KARISSA DONAHUE, AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF TIFFANY DONAHUE-HEBERT**

DONALD J. CORREA, ESQUIRE

QUINN, CORREA & GAYNOR, P.C.
59 COURT STREET
PLYMOUTH, MASSACHUSETTS, 02360
TELEPHONE: (508) 746-1930

INFO@PLYMOUTH-LAW.COM

*Attorney for Appellant Karissa Donahue,
as Personal Representative of the
Estate of Tiffany Donahue-Hebert*

# TABLE OF CONTENTS

Table of Contents                         i

Table of Authorities                     ii

Statement in Support of Oral Argument     iv

Statement of Jurisdiction                1

Statement of Issues                      2

Statement of Case                        4

Summary of Argument                     6

Argument                                8

   I.   Validity of SF 2823             8

   II.  Mental Competency             21

Conclusion                            28

Certificate of Compliance               30

Certificate of Service                  31

Addendum                              32

## TABLE OF AUTHORITIES

**Cases**

*Davis v. OPM,* No. 2022-1103, 2023 U.S. App. LEXIS 812 (Fed. Cir. Jan. 13, 2023).

Federal Employees Group Life Insurance Act of 1954.

*Graber v. Metropolitan Life Ins. Co.,* 855 F. Supp. 2d 673 (N.D. Ohio 2012).

*Johnson v. Metropolitan Life Ins. Co.,* 732 F. Supp. 3d 829 (N.D. Ill. 2024).

*Metropolitan Life Insurance Company v. Atkins,* 235 F. 3d 510 (5th Cir. 2000).

*Metropolitan Life Ins. Co. v. Bradway,* 2011 U.S. Dist. LEXIS 20538, at 12 (S.D.N.Y. Feb. 24, 2011).

*Metropolitan Life Insurance Company v. Christ,* 979 F.2nd 575, 580 7th Circuit (1992).

*Metropolitan Life Ins. Co. v. Manning,* 568 F.2d 922, 926 (2d Cir.1977).

*Metropolitan Life Ins. Co. v. Zaldivar,* 337 F. Supp. 2nd 343 (D. Mass. 2004).

*Sanford v. Clarke,* 52 F.4th 582 (4th Cir. 2022)

*Stribling v. United States,* 419 F.2d. 1350,1354 (8th Cir. 1969).

*Terry v. LaGrois,* 354 F.3d 527 (6th Cir. 2004).

*Transamerica Financial Life Insurance Co. v. Session,* No. 10
Civ. 1328, 2010 U.S. Dist. LEXIS 115288, 2010 WL 4273294, at 2
(S.D.N.Y. Oct. 28, 2010).

*Ward v. Stratton,* 988 F.2d 65 (8th Cir. 1993).

**Statutes**

5 C.F.R. § 870.802 (b)

5 C.F.R. § 870.802 (c)

5 U.S.C. § 8705

5 U.S.C. § 8705 (a)

5 U.S.C. § 8705 (b)

5 U.S.C. § 8715

28 U.S.C. § 1295 (a) (1)

G.L. c. 109B § 2-804 (Mass.)

G.L. c. 190B § 5-101 (9) (Mass.)

**Other Authorities**

U.S. Dep't of Labor, Advisory Council on Employee Welfare and
Pension Benefit Plans, *Considerations for Recognizing and
Addressing Participants with Diminished Capacity,* 9 (2020)
(citing Leslie Kernisan, *Incompetency & Losing Capacity: Answers
to 8 FAQs,* Better Health While Aging: Practical Information for
Aging Health and Family Caregivers

<u>REASONS WHY ORAL ARGUMENT SHOULD BE HEARD</u>

Pursuant to Federal Circuit Rule 34 (a) appellant respectfully submits this Notice of Oral Argument and requests oral argument in this matter. Oral argument will aid this Court in resolving the legal and factual issues. As reasons therefore the appellant states:

1. This appeal presents legal questions regarding the District Court's application of Title 5 of the United States Code, Section 8705 U.S.C. § 8705, Subsection (a); and

2. The District Court's decision is inconsistent with well-established precedent and incorrectly broadens the "strict compliance" standard required by Title 5 of the United States Code, Section 8705.

3. As noted in the brief the District Court's decision conflicts with precedent set forth in *Metropolitan Life Insurance Company v. Christ,* 979 F. 2nd 575 7th Circuit (1992) (finding Congress intended to establish an inflexible rule); *Metropolitan Life Insurance Company v. Zaldivar,* 337 F. Supp. 2nd 343 (2004) (finding federal statute unambiguous); *Graber v. Metropolitan Life Ins. Co.,* 855 F. Supp. 2d 673 (N.D. Ohio 2012) (confirming the Office

of Personnel Management must receive confirmation from employing unit to validate Form 2823 pursuant to 5 U.S.C. § 8705 (a)); and *Metropolitan Life Insurance Company v. Atkins,* 235 F. 3d 510 (5th Cir. 2000) (the Office of Personnel Management's personnel clerk has no duty to ensure that forms were properly completed).

4. The District Court's decision also conflicts with Section 2.12 (1) of the Federal Employees Group Life Insurance Program contract between Metropolitan Life Insurance Company and the United States Office of Personnel Management, which states, inter alia:

> "*[t]he Contractor shall honor any letter or written statement as a valid designation only if such document meets **all the requirements** of a valid designation as specified in the Act and Regulation and has not been superseded by a subsequent valid designation*" (emphasis added).

5. Resolution of this case also has significant implications for the administration of the Estate of Tiffany Hebert a/k/a Tiffany Donahue Hebert (Plymouth Probate and Family Court Docket No.: PL22P2186EA) by the personal representative of said estate, Karissa Donahue.

6. Resolution of the case in favor of appellee Kathleen Hebert will adopt precedent setting law that is in contrary to

public policy. Oral argument will aid the Court in

resolving the relevant authorities.

Counsel for appellant is available for oral argument to be

determined by this Court's calendar.

DATED: March 14, 2025

Respectfully Submitted,

 /s/ Donald J. Correa
Donald J. Correa, Esquire
**QUINN, CORREA & GAYNOR, P.C.**
Circuit Court # 1047860
MA BBO # 100400
57 Court Street
Plymouth, MA 02360
Tel.: (508)746-1930
Fax: (508)747-1389
Email: info@plymouth-law.com

<u>STATEMENT OF JURISDICTION</u>

1. The United States Court of Appeals for the Federal Circuit
   has appellant jurisdiction pursuant to Title 28 of the
   United States Code, Section 1295, Subsection (a) (1), which
   provides that the United States Court of Appeals for the
   Federal Circuit shall have exclusive jurisdiction of an
   appeal from a final decision of a District Court of the
   United States.

2. This Court has appellate subject matter jurisdiction under
   Title 5 of the United States Code, Section 8715, the
   Federal Employee Group Life Insurance Act, to review final
   decisions rendered in actions brought pursuant to that
   statute.

3. The Honorable M. Page Kelley, United States Magistrate
   Judge, issued a final order in her Memorandum and Order on
   Cross-Motions for Summary Judgment dated September 16,
   2024. Appellant Donahue filed a Notice of Appeal Pursuant
   to U.S. Court of Appeals Title II Rules 3 and 4 on October
   11, 2024. Appx.32-35.

4. The District Court disposed of all the defendant-
   appellant's claims in its final order and judgment.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Two issues of the judgment require review on appeal. The
   first issue concerns the validity of a designation of a
   life insurance beneficiary form (SF 2823):

   a. that was rejected by Human Resources Shared Service
      Center (hereinafter "HRSSC" of the United States
      Postal Office (hereinafter "USPS") for Gary Hebert's
      (hereinafter "Gary," "Insured," or "Decedent") failure
      to complete Section C (Appx.256); and

   b. was resent (second SF 2823) to HRSSC (Appx.259) by an
      improper and unacceptable method (via facsimile)
      (Appx.260) by Kathleen Hebert (hereinafter "Kathleen")
      without being resigned or dated by the insured and was
      not sent nor was received by HRSSC until after the
      insured's death. Appx.261.

2. The second issue necessitating review is the denial by
   United States Magistrate Judge, M. Page Kelley, of Karissa
   Donahue's (hereinafter "Karissa") request to obtain and
   review the insured's medical records relative to Gary's
   stage IV esophageal cancer, stomach and lymph node cancer,
   which had spread throughout his body by the time of his
   death. Appx.231-238.

Review of Gary's medical records was essential to determine the insured's mental competency at the time the insured completed the designation of beneficiary form (hereinafter "SF 2823").

<u>STATEMENT OF THE CASE</u>

1. Appellant Karissa Donahue, personal representative of the
   Estate of Tiffany Hebert a/k/a Tiffany Donahue Hebert
   (Appx.36-37), brings this action for review of a decision
   rendered by Judge M. Page Kelley, presiding Magistrate in
   the First District Court of Massachusetts.

2. The appellees, Kathleen F. Hebert, Trevor P. Hebert, and
   Zackary R. Hebert (hereinafter collectively "Kathleen")
   assert entitlement to the proceeds of Gary's Federal
   Employees Group Life Insurance (hereinafter "FEGLI") policy
   on the grounds that despite an incomplete SF 2823 form
   (which was submitted to and rejected by HRSSC before the
   Gary's death and resent after Gary's death), is nonetheless
   valid.

3. Alternatively, Karissa argues entitlement to the proceeds
   as the personal representative of the decedent's wife,
   Tiffany Hebert a/k/a Tiffany Donahue Hebert (hereinafter
   "Tiffany") on the grounds that when the January 26, 2017 SF
   2823 (hereinafter "first SF 2823") and the February 16,
   2017 SF 2823 (hereinafter "second SF 2823") were submitted,
   said first form was incomplete and not valid, or in the
   alternative, that Gary was not mentally competent at the

time of the first execution and not valid after the death of the insured as to the second SF 2823. Tiffany assents that she is the statutory beneficiary.

## SUMMARY OF ARGUMENT

1. The appellant challenges the validity of Gary Hebert's designation of beneficiary form SF 2823. Appx.256, 259.

2. The first SF 2823 was submitted approximately two weeks before Gary's death, was incomplete, and was rejected. Appx.256.

3. The second SF 2823 was not sent to or received by the appropriate agency until after Gary's death, was sent by inappropriate methods, and was a photocopy of the first SF 2823. The second SF 2823 was again rejected. Appx.259, 260-261, 306.

4. Despite both SF 2823 forms being rejected by the Human Resource Shared Services Center of the United States Postal Service, the Honorable Douglas P. Woodlock issued an order holding that the first SF 2823 was a valid designation of beneficiary, without addressing appellants arguments regarding the invalidity of said form. Appx.187-205. Likewise, the Honorable M. Page Kelley adopted Woodlock's order without regard to the appellants arguments concerning the validity of said forms.

5. Moreover, Judge Kelley denied appellants discovery motion
   which sought Gary Hebert's medical records in order to
   assess his mental competency at the time the SF 2823 forms
   were executed. Appx.231-238. Gary Hebert was suffering from
   stage IV cancer that had spread throughout and his body,
   and according to witness testimony, had spread to his
   brain. Appx.43, 119, 396-397, 411, 415.

6. Neither the appellant nor the District Court reviewed said
   medical records and therefore no meaningful determination
   as to Gary Hebert's mental competency at the time he named
   his ex-spouse, as opposed to his current spouse, as 50%
   beneficiary to his life insurance policy could be made.
   Appx. 256, 259.

<u>ARGUMENT</u>

I.   <u>Validity of SF 2823</u>

1. A completed SF 2823 was not properly submitted to the appropriate agency by Gary Hebert prior to his death. Appx.256-259.

2. The best authorities on this issue come from federal employees Chauncy C. Fuller, Supervisor of the Human Resource Shared Services Center (HRSSC), Kathleen C. Healy, Program Analysis Officer in the Life and Ancillary Benefits Office at the United States Office of Personnel Management (hereinafter "OPM"), and Jonathan P. Kline, Branch Chief for Survivor Claims at the United States OPM, who submitted affidavits at the District Court's request to clarify the validity of said forms. Appx.267-272, 303-305.

3. ¶7 of the affidavit of Kathleen C. Healy (hereinafter "Healy") explains what agency is the "appropriate agency" to submit SF 2823:

   > "7. *For employees, the employing agency is the appropriate office. For retirees, the appropriate office is OPM."* Appx.271.

4. ¶10 of the affidavit of Chauncy C. Fuller (hereinafter "Fuller") confirms the same:

> "*10. …OPM's regulations require a signed, original copy before the date of death in order for the form to be valid to ensure validity of the person who is entitled to the benefit.*" Appx.268.

5. ¶10 of Fuller's affidavit also explains the appropriate manner in which SF 2823 must be received by OPM:

> "*10. [OPM] regulations require that all Life Insurance forms, including the life insurance beneficiary form (SF 2823) have to be an original, and **not a faxed copy** in order to be considered valid*" (emphasis added). Appx.268.

6. ¶4 of Fuller's affidavit explains the process of HRSSC once a SF 2823 is received:

> "*4. HRSSC responsibility as it pertains to the processing of beneficiary forms is to verify the form is stamped received by HRSSC. HRSSC must verify the form is received prior to the date of death, verify the form is signed by [two] witnesses also ensure the witnesses are not listed as beneficiaries, **verify the form is complete,** does not contain any cross outs or erasures and finally ensure the form is signed by the employee*" (emphasis added). Appx.267-268.

7. ¶¶5-7 of Fuller's affidavit notes that the appropriate agency did not receive a valid SF 2823 prior to Gary's death:

> "*5. Records show that HRSSC received an **invalid** SF 2823 on 1/27/17. HRSSC determined the form was invalid because Section C was not complete* (emphasis added).
>
> *6. HRSSC records **do not contain** a valid designation of beneficiary form for life insurance (SF 2823) prior to Mr. Hebert's date of death on February 15, 2017* (emphasis added).

> *7. On **February 16, 2017,** HRSSC received a **faxed copy**
> of a life insurance beneficiary form (SF 2823)"*
> (emphasis added). Appx.268.

8. ¶11 of Jonathan Kline's affidavit provides, inter alia:

> *"11. The information in Mr. Hebert's [official
> personnel file] (hereinafter "OPF"), received by OPM
> from USPS, indicates that on or about March 24, 2017,
> OPM received Gary E. Hebert's OPF … [n]one of the
> designation forms in the OPF were originals."*
> Appx.305.

9. Neither the first SF 2823 nor the second SF 2823 met the
   requirements as determined by the OPM or HRSSC personnel in
   evaluating the validity of same. Appx.256-261.

10. Thus, neither the first nor second SF 2823 complied with
    the statutory requirements promulgated in the Federal
    Employees Group Life Insurance Act of 1954, those
    reiterated in Title 5 of the Code of Federal Regulations,
    nor those supported by well-established judicial
    authority.

11. The Federal Employees Group Life Insurance Act (hereinafter
    "FEGLIA") enacted by Congress in 1954 provides that life
    insurance benefits shall be paid "to the beneficiary or
    beneficiaries designated by the employee in a signed and

witnessed writing [that is] **received before death** in the

employing office" (emphasis added). *5 U.S.C. § 8705 (b).*


12. Also, Title 5 of the Code of Federal Regulations, Section

870.802(b) requires that "a designation of beneficiary must

be in writing, signed by the insured individual, and

witnessed and signed by [two] people. *5 C.F.R. §*

*870.802(b)*. The **completed** designation of beneficiary form

may be submitted to the appropriate office **via appropriate**

**methods** approved by the employing office. Id. The

appropriate office must receive the designation **before** the

death of the insured" (emphasis added). Id.


13. "A designation, change, or cancellation of beneficiary in a

will or any other document not witnessed **and filed** as

required by this section has **no legal effect** with respect

to benefits under this chapter" (emphasis added). *5 C.F.R.*

*§ 870.802(c).*


14. In *Metropolitan Life Insurance Company v. Christ,* 979 F.2nd

575, 580 7th Circuit (1992) the 7th Circuit stated, inter

alia:

> *"Congress intended to establish…an inflexible rule*
> *that the beneficiary designated in accordance with the*
> *statute would receive the policy proceeds, regardless*

> *of other documents or the equities in a particular case."*

15. In *Metropolitan Life Insurance Company v. Zaldivar,* 337 F. Supp. 2nd 343 (2004) the *Zaldivar* court, reiterating the 7th Circuit decision in *Christ,* stated that the language of the federal statute is unambiguous.

    These cases clearly provide strict criteria for establishing a designation of beneficiary.

16. These cases are consistent with the result in the more recent case *Graber v. Metropolitan Life Ins. Co.,* 855 F. Supp. 2d 673 (N.D. Ohio 2012). The *Graber* case reconfirmed that OPM must receive confirmation from the employing unit in order to validate a Form 2823 pursuant to 5 U.S.C. § 8705(a).

17. In the *Graber* case the SF 2823 was only a photocopy. Graber did not prevail on collecting the proceeds under the policy because of the deficiency in the designation form.

18. In the instant case, a side-by-side comparison of the two SF 2823 forms makes clear that the second SF 2823 sent via facsimile to HRSSC is a photocopy of the first Form 2823

that was submitted to and rejected by HRSSC except for the
inclusion of Section C. Appx.256-259, 306-307.

19. Consequently, the second SF 2823 is identical in every
other aspect of the first SF 2823. The original signature
and date were not changed, as stated supra, and the
facsimile was invalid because it was not a proper method of
delivery and was sent after Gary's death. Appx.256-259,
306-307.

20. Consequently, it is undisputed that the HRSSC of the United
States Postal Service did not receive a completed SF 2823
from Gary Hebert before his death on February 15, 2017.
Appx.259-261, 268.

21. In his memorandum and order dated May 10, 2022 (hereinafter
"Order"), the Honorable Douglas P. Woodlock conceded that
the designation of beneficiary form submitted by the
insured on January 26, 2017 was incomplete because the
Insured "did not fill out Section C of the form" but noted
that the form "asked redundantly for his name (already
provided by him elsewhere on the form) and presented
several other questions." Appx.189.

22. Even if Woodlock's position is correct (to which Donahue disagrees), Woodlock's order did **not** address the issues of the incompleteness of the form, the omission of answers to critical questions, or the improper sending and HRSSC's invalid receipt of the second SF 2823. Appx.187-205.

23. Judge Woodlock's memorandum and order that the information requested in Section C of Form 2823 is merely "redundant" is in error and is inconsistent with the recent decision in _Johnson v. Metropolitan Life Ins. Co.,_ 732 F. Supp. 3d 829 (N.D. Ill. 2024). The _Johnson_ court stated that "it was up to Congress to decide whether to give courts the power to change the scheme based on a perception of fairness [and] Congress closed the door on any arguments about fairness."

24. Section C is part of Form 2823 and therefore must be completed. If the same were legally redundant, it need not be on the form at all. Section C was also essential to determine whether the insured was an active employee or retired and whether the employee is an "annuitant" or "compensationer," as well as answer to three critical questions. Appx.256, 259.

25. SF 2823 states:

> *"Your signature must be witnessed (signed) by two*
> *persons who are not named as beneficiaries. Your*
> *employing office (or OPM, if you are an annuitant or*
> *compensationer) must receive the form before you die."*
> Appx.256, 259.

26. Woodlock's opinion that Section C is "redundant" is
    disproven by Kathleen's original District Court complaint,
    which refers to Gary as both "an employee" (Appx.40) as
    well as a "former employee" (Appx.43), and Kathleen's
    amended District Court complaint which refers to Gary as
    "an employee" (Appx.118) and a "former employee"
    (Appx.120). Had Section C been completed, Gary's status as
    either an employee or "former employee" (retiree) would
    have been clear. The employee's status as either an active
    employee or a retiree determines the appropriate agency to
    send SF 2823. Appx. 256, 259, 268, 271.

27. In the same Order, Judge Woodlock confirmed that the second
    SF 2823 received via facsimile by HRSSC on February 16,
    2017, was "received after the date of Gary's death."
    Appx.190.

28. This failure to submit an original completed SF 2823 before
    the insured's death is corroborated by correspondence sent
    by HRSSC of the USPS on February 17, 2017, which provided:

> *"The form(s) are being returned unprocessed for the*
> *following reason(s):*
> ✓ *The enclosed SF 2823 was received in our office*
>   *after the death of Mr. Hebert and cannot be*
>   *processed. We are very sorry for your*
>   *loss."* Appx.261.

29. As required by *5 C.F.R. § 870.802(b),* a completed

    designation of beneficiary form must be **received** by the

    appropriate office **before** the insured's death in order to

    have legal effect.

30. Judge Woodlock's May 10, 2022 memorandum and order cites

    *Terry* in favor of granting benefits to Kathleen, however,

    the Hebert case is distinguishable. *Terry* is actually in

    support of Tiffany. Appx.201-202.

31. As stated supra, in the instant case, it is undisputed that

    the appropriate office received only an incomplete and

    "unprocessed" SF 2823 before the insured's death (Appx.256-

    258) and received a photocopy of same via facsimile

    (Appx.260, 306-307), with Section C then completed (Appx.

    259), **after** the insured's death. Appx.259, 261.

32. In the case of *Terry v. LaGrois,* the claimant proposed the

    beneficiary designation form by signing only her first

    name, neglected to date the form, and did not check the box

identifying that she had signed the form in the presence of two witnesses. *Terry v. LaGrois,* 354 F.3d 527 (6th Cir. 2004).

33. The *Terry* facts did not invalidate the SF 2823 because the Postal Service acknowledged receipt of the form despite the deficiency. However, unlike *Terry,* in the instant case the USPS rejected the form and did not receive the completed photocopy of SF 2823 until after Gary's death. Appx.190, 259, 261, 306.

34. Moreover, the issues in *Terry* involved the insureds failure to date SF 2823 and to check a box confirming the insureds signature was witnessed by two disinterested parties, but which was nonetheless witnessed and signed by said parties. The *Terry* deficiencies were distinguishable.

35. Section C of SF 2823, titled "Statement of Insured or Assignee," requires the insureds name and address, identification as either the insured or the assignee, and confirmation that the insured/assignee has not assigned their insurance, that two people witnessed the signature, and neither witness was named as beneficiary. Appx.256, 259.

36. Unlike the unchecked box indicating that the SF 2823 was witnessed in *Terry* but which was nonetheless witnessed, the same is not true in the present case. Section C was incomplete and the information was not provided elsewhere. Other than Gary's name, the first SF 2823 failed to provide Gary's address and his status as the insured or the assignee. In addition, the first SF 2823 failed to provide whether Gary had assigned the insurance, whether the form was witnessed, and whether either witness was named as a beneficiary.

37. Further, the *Terry* court found the failure to date the form lacked significance because "the statute does not impose either requirement as a condition of making a valid designation." This is unlike the present case where the insured failed to complete the entirety of Section C which is one of only four sections on SF 2823. Appx.256.

38. Holding that a SF 2823 is valid where the decedent failed to complete all information on the form sets a dangerous precedent and asks the courts to speculate regarding a decedent's intent.

39. The *Terry* court, condemning the holding in *Sears* and

reiterating Congress's intent in amending FEGLIA in 1966,

provided:

> *"The equities in Sears may have prompted the court of*
> *appeals to disregard the civil service regulation and*
> *the general intent of the statute in order to comply*
> *with the insured's wishes, but the precedent*
> *established in that case could, if generally followed,*
> *result in administrative difficulties for the Civil*
> *Service Commission and the insurance companies and,*
> *more important, seriously delay paying insurance*
> *benefits to survivors of Federal employees."*

40. *Ward v. Stratton,* 988 F.2d 65 (8th Cir. 1993) is also

support for Donahue. Just as in Hebert, in *Ward,* the OPM

rejected the form because SF 2823 was incomplete. In doing

so, the *Ward* court found that "Congress intended to

establish, for reasons of administrative convenience, an

inflexible rule that a beneficiary must be named strictly

in accordance with the statute irrespective of the equities

in a particular case." Also quoting *Metropolitan Life Ins.*

*Co. v. Manning,* 568 F.2d 922, 926 (2d Cir.1977).

41. In *Stribling v. United States,* 419 F.2d. 1350,1354 (8th

Cir. 1969), the court stated that "[t]he explicit language

employed in the amendment to 5 U.S.C. §8705(a) and the

Senate Report appertaining thereto make it abundantly clear

that Congress intended the beneficiary designation

provisions of the Federal Employees Group Life Insurance
Act to be strictly construed."

42. "A designation counts for nothing unless it satisfies all
of the statutory requirements." *Johnson, supra* at 834.

43. Strict compliance with the statutory requirements is
reiterated in the recent decision *Davis v. OPM,* in which
the court stated: "even where the substantial-compliance
doctrine has been recognized, it is narrow in scope." *Davis
v. OPM,* No. 2022-1103, 2023 U.S. App. LEXIS 812 (Fed. Cir.
Jan. 13, 2023).

44. "A district court's discretion to forgive strict compliance
with a rule that explicitly allows for substantial
compliance does not support the proposition that a district
court has discretion to forgive strict compliance with a
rule that contains no such provision and, in fact, imposes
mandatory requirements." *Davis, supra* at 7; quoting *Sanford
v. Clarke,* 52 F.4th 582, 586 (4th Cir. 2022).

45. "This mandatory requirement does not leave room to look
behind the lack of signature and instead evaluate intent."
*Davis, supra* at 7.

46. Finally, Donahue asserts that the integrity and
    determination of the HRSSC ought to be supported by this
    Court because the determination affects public policy.

II.  <u>Mental Competency</u>

1. The issue is whether Gary Hebert possessed the requisite
   mental competency to execute SF 2823 despite succumbing to
   stage IV esophageal, stomach and lymph node cancer that
   spread throughout his body. Appx.43, 119.


2. This issue is material to the case and remains unresolved.


3. "When adjudicating an undue influence claim or a mental
   competency challenge in an interpleader action based in
   diversity, federal courts apply the law of the state in
   which they sit." *Transamerica Financial Life Insurance Co.*
   *v. Session,* No. 10 Civ. 1328, 2010 U.S. Dist. LEXIS 115288,
   2010 WL 4273294, at 2 (S.D.N.Y. Oct. 28, 2010); citing *Erie*
   *Railroad Co. v. Tompkins,* 304 U.S. 64, 78-79, 58 S. Ct.
   817, 82 L. Ed. 1188 (1938).


4. An "'incapacitated person' [is] an individual who for
   reasons other than advanced age or minority, has a

clinically diagnosed condition that results in an inability
to receive and evaluate information or make or communicate
decisions to such an extent that the individual lacks the
ability to meet essential requirements for physical health,
safety, or self-care, even with appropriate technological
assistance." *G.L. c. 190B § 5-101 (9) (Mass.).*

5. "Mental competency of FEGLI insured is relevant to
determining validity of benefits waiver executed shortly
before insured's death." *Metropolitan Life Ins. Co. v.
Bradway,* 2011 U.S. Dist. LEXIS 20538, at 12 (S.D.N.Y. Feb.
24, 2011) quoting *Headley v. Metropolitan Life Insurance
Co.,* No. 98 Civ. 5929, 2000 U.S. Dist. LEXIS 9901, 2000 WL
987863, at 1 (S.D.N.Y. July 18, 2000).

6. Although *Bradway* is distinguishable from the instant case,
the decedent in Bradway had terminal liver cancer and was
admitted to the hospital suffering from elevated blood
sugar and confusion. Hospital records indicate that he was
incoherent and hallucinating but was released the following
day because his mental status improved significantly. Upon
his release, he executed a designation of beneficiary form.
The decedent died four months later. He attended four
medical appointments between the time of execution and his

death. His physician submitted an affidavit certifying the decedent's mental status and competency were normal on those occasions.

7. Similar to the *Bradway* decedent, Gary was diagnosed with cancer and experienced confusion. Appx.43, 119, 395-396. In the instant case, however, Gary had not recovered. The District Court did not review Gary's medical records, despite the efforts employed by Karissa to make these available. Appx.298-299. The court denied Karissa's motion to obtain the medical records. Appx.301-302. In the alternative, Kathleen did not provide any medical evidence of Gary's competency, only the lay testimony of biased witnesses.

8. The *Bradway* court acknowledged that Oxycodone, often prescribed for chronic pain, can cause confusion and hallucinations. *Metropolitan Life Ins. Co. v. Bradway,* 2011 U.S. Dist. LEXIS 20538 at 4 (S.D.N.Y. Feb. 24, 2011).

9. Because Karissa has been prevented from examining Gary's medical records (Appx.231-238), it cannot be determined whether the medication Gary was prescribed for his pain could have caused confusion and/or hallucinations, or

whether the cancer spread to his brain. Appx.350, 355, 369-370.

10. Gary's diminished mental competency is evidenced by the testimony given by several individuals, including Kevin Levesque (Appx.345-356), Kathleen Hebert (Appx.364-387), Karissa Donahue (Appx.387-401), Karen Adams (Appx.402-413), and Kim Donahue (Appx.413-423).

11. Kevin Levesque testified that Gary was in pain, believed his medication was being stolen, and that Gary knew "the end was coming." Appx.350, 352.

12. Kathleen Hebert testified that she would not leave Gary overnight due to his medical status. Appx.384-385.

13. Karissa Donahue testified that when she visited Gary in the hospital about one month before his passing, he did not know who she was and referred to Karissa as Tiffany, who was Gary's wife at the time of his death. Appx.396.

14. Karissa also testified that during this visit with Gary, he was confused, distraught and scared, and did not know what was going on. Appx.395.

15. Karissa testified that Gary's physicians told her the cancer had "gone to his brain." Appx.396-397.

16. Karen Adams testified that Gary's doctors told her that "at this point, the cancer had spread to his brain already." Appx.411.

17. Kim Donahue testified that she had to call the police on Gary to do a wellness check on Gary. Appx.415.

18. Kim further testified that the police officers who conducted the wellness check on Gary told her that "the cancer had obviously gone to his brain." Appx.415.

19. "Even where these [statutory requirements] are followed, a designation of beneficiary can be set aside upon a finding that the insured was not mentally competent at the time the document was executed." *Metropolitan Life Ins. Co. v. Bradway,* 2011 U.S. Dist. LEXIS 20538, at 12 (S.D.N.Y. Feb. 24, 2011).

20. Karissa's motion to access Gary's medical records was filed on March 22, 2024 (Appx.298-300) and denied by Judge Kelley

on March 25, 2024 (Appx.301-302), even though there was two
months time to obtain the medical records prior to the
scheduling order discovery deadline of May 24, 2024.


21. A report published in 2020 by the Advisory Council on
Employee Welfare and Pension Benefit Plans titled
*Considerations for Recognizing and Addressing Participants
with Diminished Capacity* explains the term "capacity" with
respect to decision making:

> *"Capacity requires that individuals be able to
> understand: the situation they are in; the decision in
> question; the consequences of making a given choice.
> The person should also be able to explain his or her
> reasoning and express the choice to others. And the
> reasoning should not rely on anything that strikes
> most people as bizarre or delusional."* Appx.434.


22. No credible evidence has been offered as to why Gary would
designate Kathleen, his ex-wife, as a beneficiary to his
life insurance policy at a time he was married to Tiffany.


23. Designating one's ex-wife as the beneficiary of a life
insurance policy while happily married to another person
would strike most people as "bizarre or delusional."


24. Donahue's argument is supported by Section 2-804 of the
Massachusetts Uniform Probate Code, G.L. c. 109B § 2-804

(Mass.), which automatically revokes a beneficiary

designation of a life insurance policy that designates an

ex-spouse following the divorce decree.


25. Likewise, no credible evidence has been offered as to why

Gary would allocate 50% of his life insurance policy to his

ex-wife rather than his present wife even if he wanted to

leave his two adult children to split the remaining 50%.

Appx.256, 259.


26. Also, Gary's abnormal handwriting on the form, although

allegedly witnessed as Gary's signature, if genuine is

indicative of Gary's mental instability. Appx.256, 259.


27. Finally, the denial of Karissa's motion for stay to

preserve the security of the interpleaded funds placed into

court by MetLife, created a condition of potential

irreparable harm.

<u>CONCLUSION</u>

WHEREFORE, Karissa, acting on behalf of the estate of Tiffany, respectfully requests that this Court declare as a matter of law that:

1. Neither the first nor the second SF 2823 was a valid designation of beneficiary to Gary's life insurance policy.

2. Karissa Donahue as personal representative of the Estate of Tiffany Hebert a/k/a Tiffany Donahue Hebert is the statutory beneficiary to Gary's life insurance proceeds.

3. In the alternative, the denial of Karissa's requests for a court order to obtain and examine Gary's medical record and therefore Gary's mental competency was error requiring a remand to the District Court to determine same.

4. Judge M. Page Kelley erred in denying Karissa's discovery request filed March 22, 2024 because review of Gary's medical records are relevant, if not dispositive, of the issue of Gary's mental competency at the time the first and second SF 2823 were executed. Karissa had ample time to obtain and review same before the May 25, 2024 discovery deadline.

5. The District Court erred in denying Karissa's Motion to
   Stay the interim disbursement of the interpleaded funds
   pending this appeal because there could be irreparable harm
   if the interpleaded funds are not available if the District
   Court decision is reversed by the Circuit Court.

                              Respectfully submitted,

                              /s/ Donald J. Correa
                              Donald J. Correa, Esquire.
                              Quinn, Correa & Gaynor, P.C.
                              59 Court Street
                              Plymouth, Massachusetts 02360
                              Tel.: (508) 746-1930
                              info@plymouth-law.com
                              *Attorney for the Appellant,*
                              *Karissa Donahue as Personal*
                              *Representative of the Estate*
                              *of Tiffany Donahue-Hebert*

<u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

Certificate of Compliance With Type-Volume Limit,

Typeface Requirements, and Type-Style Requirements


1. This document complies with the type-volume limit of Fed.

   R. App. P. 32(a)(7)(B)(i) because, excluding the parts of

   the document exempted by Fed. R. App. P. 32(f): this brief

   uses a monospaced typeface and contains 802 lines of text.


2. This document complies with the typeface requirements of

   Fed. R. App. P. 32(a)(5) and the type style requirements of

   Fed. R. App. P. 32(a)(6) because: this document has been

   prepared in a monospaced typeface using Courier New with

   12-point font, which does not exceed 10.5 characters per

   inch.


/s/ Donald J. Correa
_____
Attorney for Appellant
Dated: March 14, 2025

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

<u>CERTIFICATE OF SERVICE</u>

I, Donald J. Correa, hereby certify that on February 24, 2025 I
served the "Brief and Appendix of the Defendant-Appellant" and
"Certificate of Service" by electronic filing to the Clerk of
the U.S. Court of Appeals for the First Circuit as well as by
email to Kris Aleksov, Esquire, The Law Office of Kris Aleksov,
28A Bradford Street, Wayland, MA 01778 as well as by electronic
filing to William D. Pandolph, Esq., Sulloway & Hollis,
P.L.L.C., 9 Capitol Street, Concord, NH  03301,
wpandolph@sulloway.com as well as by electronic filing to Susan
M. Poswistilo, Office of the U.S. Attorney, John J. Moakley
Federal Courthouse, One Courthouse Way, Suite 9200, Boston,
MA  02210.

DATED: March 14, 2025

                        Appellant, Tiffany Donahue Hebert
                        by her authorized representative,
                        Karissa Donahue by her attorney,
                        Donald J. Correa
                        QUINN, CORREA, & GAYNOR, P.C.

                        /s/ Donald J. Correa
                        _____
                        Donald J. Correa, Esquire
                        Circuit Court # 1047860
                        MA BBO # 100400
                        Quinn, Correa, & Gaynor, P.C.
                        59 Court Street
                        Plymouth, Massachusetts 02360
                        Tel.: (508) 746-1930
                        Fax: (508) 747-1389
                        Email: Info@plymouth-law.com

ADDENDUM

TABLE OF CONTENTS

Honorable M. Page Kelley's Memorandum and Order dated    33
September 16, 2024

Honorable M. Page Kelley's Judgment dated September 17,    49
2024

Honorable M. Page Kelley's Amended Judgment dated October    51
11, 2024

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KATHLEEN F. HEBERT,
TREVOR P. HEBERT, and
ZACHARY R. HEBERT,

      Plaintiffs,

      v.                          CIVIL ACTION NO. 18-11483-MPK

OFFICE OF PERSONNEL MANAGEMENT,
METROPOLITAN LIFE INSURANCE CO.,
and KARISSA DONAHUE, as personal
representative of the Estate of Tiffany Hebert,
a/k/a Tiffany Donahue Hebert, deceased,

      Defendants.

MEMORANDUM AND ORDER ON
<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT (##138, 140)</u>

KELLEY, U.S.M.J.

I. <u>Introduction</u>

      This interpleader action concerns competing claims between the purported beneficiaries

of decedent Gary Hebert's ("Gary's") Federal Employees' Group Life Insurance ("FEGLI")

policy.  Though more than six years have passed since his death and this case's inception, the

proceeds of Gary's life insurance policy have yet to be disbursed.[1]  Kathleen F. Hebert

("Kathleen"), Trevor P. Hebert, and Zachary R. Hebert (collectively, "plaintiffs")—Gary's former

wife and his two sons—and defendant Karissa Donahue ("Karissa"), the daughter of Gary's

_____

[1] These funds were deposited with the court on November 22, 2019.  (##60, 61.)

widow Tiffany Hebert ("Tiffany") and the personal representative of her estate, have each filed interpleader applications for the funds. At the center of this case is a dispute over the validity of a Designation of Beneficiary Form SF 2823 ("Form-2823") which designates plaintiffs as the policy's beneficiaries.

Plaintiffs have moved for summary judgment on the only issues remaining in this case: whether Gary's signature on the Form-2823 is authentic, and, if so, whether he had sufficient mental capacity when he signed it. Specifically, they claim that there is no evidence that Gary's signature is not his own or that he lacked such capacity. Aside from disputing these two issues— and thereby the validity of the Form-2823—Karissa has filed her own motion for summary judgment and raises two separate issues in an attempt to relitigate the form's completeness and establish herself as the policy's sole beneficiary.[2]

For the following reasons, plaintiffs' Motion (#138) is allowed and Karissa's Motion (#140) is denied. There are no genuine disputes in this case, and plaintiffs are entitled to the proceeds of Gary's life insurance policy as its properly-designated beneficiaries in accordance with FEGLIA's statutory order of precedence. *See* 5 U.S.C. § 8705(a).

II. Background

    A. Procedural Background

This case began in July 2018 as an action for declaratory relief before it was "refashion[ed]" into "an interpleader proceeding" some years later. *See* ##1, 73 at 11. It has been treated by the parties as one since. On May 10, 2022,[3] after Tiffany had challenged the

---

[2] Under the Federal Employees' Group Life Insurance Act ("FEGLIA"), 5 U.S.C. § 8701 et seq., where there is no properly-designated beneficiary, the proceeds are paid "to the widow or widower of the employee." 5 U.S.C. § 8705(a).

[3] At this time the case was still assigned to District Court Judge Woodlock.

validity and completeness of the Form-2823 in her Application for Interpleader Funds and Declaratory Relief (#55), the court entered a Memorandum and Procedural Order (#73) which issued certain procedural directives but, more importantly, found the form valid and in compliance "with the <u>statutory</u> <u>requirements</u> to designate a beneficiary set out in [FEGLIA]."[4] (#73 at 12) (emphasis in original).  The Order expressed the court's inclination to enter final judgment for plaintiffs, but Tiffany's estate was given an opportunity to submit "any further substantive briefing, beyond that already submitted . . . opposing such a final judgment[.]"[5] *Id.* at 19.

Both parties submitted further pleadings and affidavits, with Tiffany's estate raising two issues concerning the authenticity of Gary's signature on the Form-2823 and his mental capacity at the time of signing it.[6]  *See* #76 at 8-10.  Given certain "deficiencies" in these submissions and the new questions that had been raised with respect to Gary's capacity and the circumstances of his execution of the form, Judge Woodlock determined that an evidentiary hearing involving the parties and certain witnesses was necessary.  (#87.)  The matter was then referred to this court for, among other things, the evidentiary hearing (#96), which was held over the course of two

---

[4] The Order also allowed amendment with respect to Count III of plaintiffs' proposed Amended Complaint (#66) but declined to permit amendment with respect to its proposed Counts I, II, and IV, finding these additional claims "futile" in light of the case's status as an interpleader action.  (#73 at 18-19.)  Though it considered the United States defendant, the Office of Personnel Management ("OPM"), to have been "effectively since dismissed" from the case, the court elected to exercise its supplemental jurisdiction, concluding that plaintiffs' claims "necessarily raise[d] a substantial question of federal law[.]"  *Id.* at 10-11.

[5] Tiffany had, by that time, passed away.  *See* #69.

[6] Tiffany had before raised Gary's capacity as a "collateral" issue in her Application for Interpleader Funds but had clarified that, without certain pretrial discovery and "[f]or purposes of [her] application for interpleader, a detailed discussion of Gary's competency [could] [not] be made."  (#55 at 6-7.)

days in January 2024.[7]  (##119, 126.)

During that hearing, which this court viewed as "akin to depositions[,]" the parties were permitted to examine and cross-examine a number of witnesses, including Kathleen and Karissa, on matters related only to the two issues which were outstanding—the authenticity of Gary's signature on the Form-2823 and his mental capacity at the time of its execution.[8]  (#116.)  After the hearing, the court invited the parties to file a proposed schedule for briefing on summary judgment, and on June 28, 2024, these cross-motions followed.

B. Factual Background

The relevant facts are set out below and are undisputed, unless noted otherwise.[9]

Gary and Kathleen were married on April 13, 1991.  (#139 ¶ 9.)  Together, the couple had two sons—Zachary and Trevor—before they divorced on March 2, 2015, after nearly twenty-four years of marriage.  *Id.*  In 2016, Gary married Tiffany and, in the same year, was diagnosed with Stage IV esophageal cancer.  *Id.* ¶ 10; *see* #138-1 at 2.  Throughout 2016 and into early 2017, Gary was in and out of the hospital.  (#138-3 at 51.)  During this same period, Tiffany experienced health troubles of her own and was hospitalized to treat a serious medical condition.  *Id.* at 29-31.  In the last of his hospital stays, Gary was admitted to Tobey Hospital in Wareham,

---

[7] The parties later consented to the jurisdiction of this court in July 2024.  (##142, 143.)

[8] This court informed the parties at the start of the hearing that it understood the May 10, 2022 Order to have "settled the issue" of the Form-2823's validity and explained that it would not revisit issues which had already been decided.  (#130 at 6-7.)

[9] The facts in this case are drawn from: the (1) "Statement of Facts" listed in "Plaintiffs' Memorandum in Support of Summary Judgment" (#139) and exhibits attached to their Motion for Summary Judgment (#138), including the "Verified Affidavit of Kevin Levesque" (#138-1 at 1-3), the "Verified Affidavit of Lorraine Sawyer" (#138-1 at 4-5), and transcript excerpts from the two-day evidentiary hearing held on January 16, 2024 (#138-2) and January 30, 2024 (#138-3); and, from the (2) "Statement of Material Facts" listed in the "Motion for Summary Judgment of Defendant Karissa Donahue" (#140) and select exhibits attached to it, including the January 26, 2017 Form SF 2823 (#140-3) and the "Declaration of Chauncy L. Fuller" (#140-8).

[4]

Massachusetts sometime in mid-January 2017 after Karissa's sister Karen Adams ("Karen") and her aunt Kim Donahue ("Kim"), with whom Gary was staying, came to believe he was experiencing confusion and decided to drive him there.[10]  (#138-3 at 36, 48-50, 58.)  When Gary was discharged from Tobey Hospital later that same day, he was picked up by his long-time, childhood friend Kevin Levesque and driven to Kathleen's home in Wareham, where he moved back in with her and his two sons.  (#139 ¶ 10; #138-2 at 38-39, 42-43; #138-3 at 47-48.)

Through his employment with the United States Postal Service ("USPS") and up to the time of his death, Gary was enrolled in a FEGLI life insurance policy issued by the Metropolitan Life Insurance Company but administered by OPM.[11]  According to plaintiffs, on January 26, 2017, during his stay at Kathleen's home, Gary prepared and signed a Form SF 2823 which named Kathleen, Zachary, and Trevor as the beneficiaries of his $345,000 life insurance policy. (#139 ¶ 11; #140 at 5; *see* #140-3.)[12]  As they explain, Gary signed this form in the presence of two witnesses: Lorraine Sawyer, a USPS administrative assistant and Gary's colleague of nine years, and Levesque, who was staying at Kathleen's home.  (#139 ¶¶ 13, 17; #138-2 at 11, 46.) Both Levesque and Sawyer signed the Form-2823 under a section titled "D. Witnesses To Signature[,]" indicating their role as such.  (#140-3.)  Sawyer, whose duties with USPS included handling the completion of life insurance and retirement forms, then helped Gary fill out a disability retirement form and a light duty form in the event he was allowed to return to work.

---

[10] According to Karissa, Gary's one-day stay at Tobey Hospital occurred "about a month, month-and-a-half before he passed away" on February 15, 2017.  (#138-3 at 35-36.)  In his affidavit, Levesque places this stay as having occurred on January 22, 2017.  (#138-1 at 2.)

[11] Under FEGLIA, OPM has the authority to regulate and administer such benefits.  *See Metro. Life Ins. Co. v. Beard*, 321 F. Supp. 3d 181, 182 (D. Mass. 2018) (citing 5 U.S.C. § 8709).

[12] The Form-2823 designates Kathleen as a 50% beneficiary and Gary's sons Zachary and Trevor as equal 25% beneficiaries.  *See* #140-3.

(#139 ¶ 17; #138-2 at 10-12, 14.)  Together, the pair reviewed this paperwork, shared coffee, and

spoke about work and the upcoming Super Bowl before Sawyer eventually left the home.  (#138-

2 at 34-35.)

Kathleen faxed the Form-2823 and sent it via overnight mail to a USPS facility in

Greensboro, N.C. where it was marked as received the next day, on January 27, 2017.  (#138-2 at

26; #138-3 at 6; #140-8 ¶ 5.)[13]  Gary remained with Kathleen at her home, together with his two

sons and Levesque, until he succumbed to his illness less than three weeks later, on February 15,

2017.[14]  (#138-1 at 2.)  Though neither she nor Kim nor Karen were present on January 26, 2017,

Karissa disputes the authenticity of Gary's signature on the Form-2823 and his mental capacity at

the time plaintiffs claim he signed it.  *See* #138-3 at 41, 52, 63.

Additional facts will be added below, where appropriate.

III. <u>Legal Standard</u>

Summary judgment is intended "to pierce the boilerplate of the pleadings and assay the

parties' proof in order to determine whether trial is actually required."  *Tobin v. Fed. Express

Corp.*, 775 F.3d 448, 450 (1st Cir. 2014) (additional citation and quotations omitted).  It has been

described as "a proper decisional vehicle" in an interpleader matter.  *Metropolitan Life Ins. Co. v.

O'Ferrall Ochart*, 635 F. Supp. 119, 121 (D.P.R. 1986) (additional citation omitted).  Summary

judgment is appropriate where "the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

---

[13] Facts related to the circumstances of the Form-2823's receipt and its subsequent processing by USPS
are described in detail in the May 10, 2022 Order which, despite USPS's decision to mark the form as
invalid and incomplete, found that it was valid and that it had been properly received by the agency.  *See*
#73 at 3-4.  As discussed below, this decision considers issues related to Gary's mental capacity and his
signature, and does not consider issues which the May 10, 2022 Order resolved.

[14] Tiffany died exactly three years later, on February 15, 2020.  *See* #74 at 2.

The moving party bears the initial burden of asserting "the absence of a genuine issue of material fact" and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (additional citation omitted).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" *Vineberg v. Bissonnette*, 548 F.3d 50, 56 (1st Cir. 2008) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law."  *Id.* (quotations, citations, and alteration omitted).  "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Fontanez-Nunez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006) (additional citation and quotations omitted).

In assessing whether summary judgment is proper, the court must view the record in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-movant's favor.  *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014).  "Where, as here, the parties cross-move for summary judgment, the court must assay each motion 'separately, drawing inferences against each movant in turn.'" *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 21 (1st Cir. 2018) (quoting *EEOC v. Steamship Clerks Union*, 48 F.3d 594, 603 n.8 (1st Cir. 1995)).  In this way, "[c]ross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed."  *Adria Int'l Group, Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (additional citation omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

[7]

there is no genuine issue for trial."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (additional citation and quotations omitted).

IV. <u>Discussion</u>

    A. <u>Karissa's Motion for Summary Judgment (#140)</u>

    Karissa uses her Motion for Summary Judgment as an opportunity to argue issues which, as plaintiffs recognize in their Opposition (#148), have "already [been] considered and disposed of." (#148 at 1.)  While the Motion lists the authenticity of Gary's signature and his mental capacity as "two issues for trial[,]"it also raises two more issues "for adjudication by interpleader and declaratory relief." (#140 at 5.)

    Those issues are:

> (1) whether the "Form 2823 dated January 26, 2017, without Section C being completed, [was] legally effective, or did OPM have the right to reject it and return it because of the incomplete Section C"; and,
>
> (2) whether the form, "without being acknowledged or 'signed off' by the USPS, [was] complete and effective or did OPM have the right to reject it and return it[.]" *Id.* at 5-6.

    These two issues were decided by the May 10, 2022 Memorandum and Procedural Order. The court there concluded that while Gary "did not completely fill out every aspect of the beneficiary form,"—that is, its Section C—"he executed all aspects required under the applicable statutory scheme, the Federal Employees' Group Life Insurance Act of 1954[.]" (#73 at 1.)  The Order thoroughly considered the applicable statutory sections, regulations, and the caselaw as it related to the form and unequivocally found Gary "in complete compliance" with FEGLIA's terms, concluding that he "made a valid designation of his beneficiaries under Section

8705(a)."[15] *Id*. at 4 n.2, 14.

Even before the May 10, 2022 Order had been entered, Tiffany, for whom Karissa was later substituted, had made nearly identical arguments in her Application for Interpleader Funds. *Compare* #55 at 9 *with* #140 at 5-6. These arguments were before the court when it found, as a matter of law, that the Form-2823 represented a valid designation of Gary's beneficiaries. This court will not disturb that finding, which constitutes the law of this case. *See Redondo Constr. v. Izquierdo*, 929 F. Supp. 2d 1, 6 (D.P.R. 2012) ("[a] presumption exists that 'a successor judge should respect the law of the case[,]'" a doctrine which "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (quoting *Ellis v. United States*, 313 F.3d 636, 646 (1st. Cir. 2002) and *Pepper v. United States*, 131 S. Ct. 1229, 1250, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011), respectively).

B. Plaintiffs' Motion for Summary Judgment (#138)

Plaintiffs have moved for summary judgment on what they describe in their supporting memorandum (#139) as "the two issues left for resolution" in this case: (1) "[w]hether Gary Hebert had the requisite mental capacity to execute the change of beneficiary designation form on January 26, 2017, and [(2)] whether Gary Hebert's signature on the form is authentic." (#139 at 2.) They assert that Karissa has failed to offer evidence sufficient to create a genuine dispute

---

[15] As the court explained: "[t]hat Gary did not provide certain redundant and/or superfluous <u>non-statutorily or regulations-based</u> responses called for in Section C of the form does not invalidate his designation." (#73 at 14) (emphasis in original). Furthermore, and of particular importance to the issues raised by Karissa, the court clarified: "[t]he circumstance that the USPS service center, instead of processing the form, erroneously returned it to Gary so that he could provide superfluous information is immaterial to the question whether Gary met the governing statutory requirements for beneficiary designation." *Id*. at 17-18. Karissa admits that through this Order, the court "ruled that the incomplete Form 2823 was nonetheless valid." (#140 at 10.) Although she disputes, in the next line of her Motion, whether that Order "was a proper statement of the law[,]" she never moved for reconsideration of this Order. *Id.*

on either issue.  For the reasons stated below, this court agrees.

1. Whether the Signature on the Form-2823 Is Gary's

Citing the affidavits and the related testimony of Levesque and Sawyer that they personally witnessed Gary sign the form himself,[16] plaintiffs claim that Karissa has not presented any evidence which might suggest that the signature on the Form-2823 is not Gary's own.  The regulations that accompany FEGLIA require that "[a] designation of beneficiary must be in writing, signed by the insured individual, and witnessed and signed by 2 people."  5 C.F.R. § 870.802(b).  FEGLIA itself "is silent" with respect to "challenges to determination of eligibility for benefits based on defenses such as forgery or mental incapacity[,]" and courts "typically rely on federal law" in resolving such disputes.  *Beard*, 321 F. Supp. 3d at 184-85 (collecting cases).

When it comes to forgery, the caselaw is scarce, though as the only court in this circuit that has considered the issue has stated, "the [Uniform Commercial Code ("UCC")] provides a helpful starting point" with respect to a party's burden of proof.  *Id.* at 185.  "Under the UCC, a party must specifically deny a signature's authenticity in the pleadings."  *Id.* (citing U.C.C § 3-308(a)).

U.C.C § 3-308(a) reads, in relevant part:

[i]n an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings.  If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.

Unlike in *Beard,* where the defendant had specifically denied the authenticity of the decedent's signature on a FEGLI Form SF 2818 in his answer, in discovery materials, and then later in his

---

[16] *See* #138-2 at 13, 39.

summary judgment pleadings, Karissa first raised the issue of Gary's signature and denied its authenticity nearly four years into this case and only after the court entered the May 10, 2022 Order signaling its inclination to enter final judgment for plaintiffs.[17]

Aside from claiming in the final paragraph of her affidavit that she "do[es] not believe that the signature that was presented on the beneficiary designation form dated January 26, 2017 is in fact Gary's[,]" Karissa has not submitted any handwriting analysis, expert testimony, example signature comparisons, or any other form of evidence to support this contention.[18] (#151-2 ¶ 12.)  When she was cross-examined at the evidentiary hearing and asked about her statement, Karissa simply reiterated her belief that the signature was not Gary's but also admitted that, because she was not actually present when the Form-2823 was signed, she could not answer definitively.  (#138-3 at 41-42.)

Perhaps more importantly, and irrespective of whether the provisions of U.C.C. § 3-308(a) apply to this case, Karissa has waived this issue by failing to further develop it in her Opposition to plaintiffs' Motion for Summary Judgment.  Instead, Karissa devotes a substantial portion of that submission to restating her need for additional discovery, an issue which this court previously considered and denied.[19]  The brief section of her response which addresses the relevant issues, however, hardly constitutes an opposition.  *See* #151 at 4-7.  Karissa merely summarizes the testimony of the witnesses at the evidentiary hearing, and—despite having six

---

[17] Specifically, this issue was first raised on June 23, 2022, in "Tiffany Donahue Hebert's Opposition to Final Judgment Pursuant to Memorandum and Order" (#76) and in "Karissa Donahue's Affidavit in Support of Opposition to Final Judgment" attached to it.  Karissa resubmitted this same affidavit as an exhibit (#151-2) to her Opposition (#151) to plaintiffs' Motion for Summary Judgment.

[18] In her Opposition to Final Judgment, Tiffany had attempted to distinguish Gary's signature on the Form-2823 from his signature on another FEGLI form (*see* #76 at 8), but Karissa failed to make any such argument or comparisons in her summary judgment pleadings or at the evidentiary hearing.

[19] *See* #150 (denying the portion of Karissa's "Emergency Motion" (#145) seeking additional discovery).

[11]

weeks to prepare an opposition—cites no caselaw and includes no legal argument beyond the conclusory claim that "the pleadings, memorandums and [her] affidavit . . . presents sufficient legal basis that said documents and evidence indicates to date creates sufficient factual controversy as to the issues of Gary Hebert's mental competency and genuineness of the signature on Form 2823." (#151 at 7.) "'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Photographic Illustrators Corp. v. Orgill, Inc.*, 118 F. Supp. 3d 398, 411 (D. Mass. 2015) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) and waiving party's argument that had been "scarcely briefed") (alteration in original); *see Delaney v. Mass. Bay Transp. Auth.*, 24 F. Supp. 3d 121, 125 n.7 (D. Mass. 2014) (argument not developed in party's opposition to summary judgment motion was deemed to have been waived).

### 2. Whether Gary Had Sufficient Capacity When He Signed the Form-2823

FEGLIA is silent on the issue of mental capacity, as noted above, and federal law is once again instructive, as is *Beard*. *See Metro. Life Ins. Co. v. Beard*, No. 16-11782-PBS, 2019 U.S. Dist. LEXIS 20053, 2019 WL 480513, at *5 (D. Mass. Feb. 7, 2019) (comparing caselaw considering issues of mental capacity under the Servicemen's Group Life Insurance Act ("SGLIA") and concluding, when confronted with a capacity challenge under FEGLIA, that federal law supplied the necessary standard). Still, there appears to be no consistent federal standard for assessing mental capacity in this context, and the related caselaw is relatively undeveloped. "Where 'federal common law is silent or not fully formed with respect to an issue,'" as is the case here, "'it may be appropriate to borrow from state law principles in fashioning the federal common law.'" *Id.* (quoting *Forcier v. Forcier,* 406 F. Supp. 2d 132, 140 (D. Mass. 2005), *aff'd sub nom. Forcier v. Metro. Life Ins. Co.*, 469 F.3d 178 (1st Cir. 2006), and

citing Massachusetts law with respect to a party's capacity to contract).

Under Massachusetts law, the capacity to contract requires "the ability to 'understand the nature and quality of the transaction' and to 'grasp its significance.'" *Maimonides Sch. v. Coles*, 71 Mass. App. Ct. 240, 251, 881 N.E.2d 778 (2008) (quoting *Krasner v. Berk*, 366 Mass. 464, 467, 319 N.E.2d 897 (1974)) (additional citation omitted).  This inquiry examines "a party's understanding or conduct only at the time of the disputed transaction." *Sparrow v. Demonico*, 461 Mass. 322, 331, 960 N.E.2d 296 (2012) (additional citations omitted).  A party lacks the capacity to contract—and the attendant contract may thus be voidable—where he is "'incapable of understanding and deciding upon the terms of the contract[,]'" *id.* at 328 (additional citation omitted), or where "'by reason of mental illness or defect, [he] is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition.'" *Id.* at 329 (additional citations omitted).  Of particular importance here, "medical evidence is necessary to establish that a person lacked the capacity to contract due to the existence of a mental condition." *Sparrow*, 461 Mass. at 332.  Finally, "[u]nder federal law, there is a 'presumption of mental capacity in the insurance context[.]'" *Beard*, 2019 WL 480513, at *6 (quoting *Rice v. Office of Servicemembers' Grp. Life Ins.*, 260 F.3d 1240, 1248 (10th Cir. 2001)).  "Similarly, under Massachusetts law, '[t]he burden is on the party seeking to void the contract to establish that the person was incapacitated at the time of the transaction.'" *Id.* (quoting *Sparrow*, 461 Mass. at 327) (alteration in original).

As plaintiffs point out, both Levesque and Sawyer gave "very clear" testimony that Gary appeared mentally competent and able to fully understand the significance of his actions when they witnessed him sign the Form-2823 at Kathleen's home on January 26, 2017.  (#139 at 9.) As Levesque explained, Gary was at the time "very lucid and . . . sitting up at the edge of the

[13]

045

bed, talking and joking"—to him, there was "[n]o question at all" that Gary had the capacity to

sign the Form-2823. (#138-2 at 39-40.) Likewise, Sawyer indicated that Gary "appeared good"

and that she had "no question that he knew what he was signing." *Id.* at 13. Kathleen, who also

testified at the evidentiary hearing, stated that she had no concerns about Gary's mental capacity

at the time he signed the Form-2823. (#138-3 at 5-6.) According to Kathleen, during the period

Gary lived with her and their two sons, he was visited by his co-workers, was able to care for

himself and regularly interact with others, and was, in general, "fine mentally" and "knew what

he was talking about."[20] *Id.* at 22-23, 25-26.

Apart from her failure to develop the issue of Gary's capacity in her Opposition, to the

extent Karissa relies on her own observations or those of Kim and Karen to rebut plaintiffs'

evidence and the presumption of Gary's capacity, this approach fails. Karissa testified that the

last time she saw Gary was after Kim and Karen brought him to Tobey Hospital sometime in

mid-January, "about a month, month-and-a-half before he passed away" on February 15, 2017.

*Id.* at 35-36. That Gary appeared "confused, distraught . . . scared" or incompetent to Karissa

during this hospital visit, at least a week-and-a-half before he signed the Form-2823 according to

her chronology of the events—and four days before according to Levesque's—is of no

consequence.[21] *Id.* The fact remains that Karissa has not presented any evidence with respect to

Gary's mental capacity on January 26, 2017—the date on which he signed the Form-2823 and

the "only" date relevant to the capacity analysis. *Sparrow*, 461 Mass. at 331; *see Beard*, 2019

WL 480513, at *6 (though there was evidence that decedent was intoxicated on a certain date, it

---

[20] As she explained, Gary attended a Super Bowl party, walked around the home and "up and down" a flight of thirteen stairs to use one of its bathrooms, and fed himself. (#138-3 at 23, 25.)

[21] This is also the case for Kim and Karen's testimony that Gary appeared scared and confused before they decided to bring him to Tobey Hospital in mid-January. (#138-3 at 48, 58.)

[14]

was "not sufficient to prove that he was incompetent the day before" and thus lacked the capacity to sign a FEGLI Form SF 2818; bench trial resulted in finding of sufficient capacity).

Without any such evidence, "a jury could only speculate" how Gary's alleged state at the time of his one-day stay at Tobey Hospital might have affected his capacity to sign the Form-2823 several days later. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden*, 11 F.4th 12, 23-24 (1st Cir. 2021) (affirming summary judgment for party in interpleader action where decedent had been hospitalized prior to his execution of the relevant agreements; a finding that he lacked capacity at a later date, "in the face of uncontroverted evidence of his mental lucidity at all relevant times, including most importantly during the transaction at issue -- would amount to mere speculation.").

Moreover, despite her belief that the cancer "had gone to [Gary's] brain" and incapacitated him,[22] Karissa has failed to introduce Gary's health records or any other form of medical evidence—the precise sort "necessary to establish that a person lacked the capacity to contract due to the existence of a mental condition." *Sparrow*, 461 Mass. at 332. There is simply no evidence before this court which shows that Gary lacked the capacity to contract on the date he signed the Form-2823, and the testimony taken in this case indicates otherwise.

---

[22] *See* #138-3 at 37.

V. Conclusion

For the reasons stated above, plaintiffs' Motion for Summary Judgment (#138) is allowed, and Karissa's Motion for Summary Judgment (#140) is denied.  The Clerk is directed to release the interpleaded funds, together with interest, to plaintiffs.

September 16, 2024                                                   /s/ M. Page Kelley
                                                                    M. Page Kelley
                                                                    United States Magistrate Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KATHLEEN F. HEBERT,
TREVOR P. HEBERT, and
ZACHARY R. HEBERT,

      Plaintiffs,

      v.                            CIVIL ACTION NO. 18-11483-MPK[1]

OFFICE OF PERSONNEL MANAGEMENT,
METROPOLITAN LIFE INSURANCE CO.,
and KARISSA DONAHUE, as personal
representative of the Estate of Tiffany Hebert,
a/k/a Tiffany Donahue Hebert, deceased,

      Defendants.

<u>JUDGMENT</u>

KELLEY, U.S.M.J.

      This case came before the court, the Honorable M. Page Kelley, United States Magistrate

Judge, presiding.  In accordance with the Memorandum and Order (#153) entered on September

16, 2024,

             IT IS ORDERED AND ADJUDGED:

             Summary judgment for plaintiffs.  The Clerk is directed to release the

             interpleaded funds, together with interest, to plaintiffs.

             No costs.

---

[1] With the parties' consent, this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). (#144.)

Dated at Boston, Massachusetts this 17th day of September, 2024.[2]


/s/ M. Page Kelley
M. PAGE KELLEY
United States Magistrate Judge

---

[2] As expressed in Judge Woodlock's May 10, 2022 Memorandum and Procedural Order (#73), the Office of Personnel Management was considered to have been "effectively since dismissed" from this case, and no party has since argued otherwise. (#73 at 10-11.) Metropolitan Life Insurance Co., which deposited the interpleaded funds with the court on November 22, 2019 (*see* ##60, 61), was similarly dismissed. "Once an interpleader [party] pays the full amount disputed into the court's registry, and the claimants to that *res* have been given notice and opportunity to be heard and ordered to interplead, the law normally regards [that party] as having discharged its full responsibility." *Cont'l Cas. Co. v. Caramadre,* C.A. No. 18-461 WES, 2019 U.S. Dist. LEXIS 131180, 2019 WL 3577775, at *2-3 (D.R.I. Aug. 6, 2019), *report and recommendation adopted,* 2019 U.S. Dist. LEXIS 146229, 2019 WL 4059840 (D.R.I. Aug. 28, 2019) (dismissing insurance company and relieving it of liability "as to [the] case" upon deposit of the interpleaded funds) (additional citations and quotations omitted).

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KATHLEEN F. HEBERT,
TREVOR P. HEBERT, and
ZACHARY R. HEBERT,

     Plaintiffs,

     v.

OFFICE OF PERSONNEL MANAGEMENT,
METROPOLITAN LIFE INSURANCE CO.,
and KARISSA DONAHUE, as personal
representative of the Estate of Tiffany Hebert,
a/k/a Tiffany Donahue Hebert, deceased,

     Defendants.

CIVIL ACTION NO. 18-11483-MPK[1]

<u>AMENDED JUDGMENT</u>

KELLEY, U.S.M.J.

This case came before the court, the Honorable M. Page Kelley, United States Magistrate Judge, presiding.  In accordance with the Memorandum and Order (#153) entered on September 16, 2024,

IT IS ORDERED AND ADJUDGED:

Summary judgment for plaintiffs.  The Clerk is directed to release the interpleaded funds, together with interest, to plaintiffs' counsel.

No costs.

[1] With the parties' consent, this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). (#144.)

Dated at Boston, Massachusetts this 11th day of October, 2024.[2]


/s/ M. Page Kelley
M. PAGE KELLEY
United States Magistrate Judge

---

[2] As expressed in Judge Woodlock's May 10, 2022 Memorandum and Procedural Order (#73), the Office of Personnel Management was considered to have been "effectively since dismissed" from this case, and no party has since argued otherwise. (#73 at 10-11.) Metropolitan Life Insurance Co., which deposited the interpleaded funds with the court on November 22, 2019 (*see* ##60, 61), was similarly dismissed. "Once an interpleader [party] pays the full amount disputed into the court's registry, and the claimants to that *res* have been given notice and opportunity to be heard and ordered to interplead, the law normally regards [that party] as having discharged its full responsibility." *Cont'l Cas. Co. v. Caramadre,* C.A. No. 18-461 WES, 2019 U.S. Dist. LEXIS 131180, 2019 WL 3577775, at *2-3 (D.R.I. Aug. 6, 2019), *report and recommendation adopted,* 2019 U.S. Dist. LEXIS 146229, 2019 WL 4059840 (D.R.I. Aug. 28, 2019) (dismissing insurance company and relieving it of liability "as to [the] case" upon deposit of the interpleaded funds) (additional citations and quotations omitted).